UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULISSA BRADSHAW,

      Plaintiff,

v.                                   CASE No. 8:15-CV-988-T-30TGW

RELIANCE STANDARD
LIFE INSURANCE CO.

      Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff, Julissa Bradshaw, brought this lawsuit alleging that the defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 et seq., by denying her long-term disability benefits under an employer-sponsored disability plan. The defendant has filed a motion for summary judgment, arguing that it did not wrongly deny the plaintiff's claim because benefits were precluded under the Policy's Pre-Existing Conditions limitation.

The administrative record and the parties' memoranda have been reviewed. Because there is no genuine issue of material fact that the

defendant's decision was correct and reasonable, I recommend that the defendant's motion for summary judgment be granted.

I.

On April 8, 2013, the plaintiff began working for Pyramid Healthcare Solutions, Inc., as an account representative (Doc. 14, p. 2; AR 262).[1] Pyramid provides to qualifying employees short-term and long-term disability benefits.

As pertinent here, defendant Reliance Standard Life Insurance Company issued to Pyramid Group Long Term Disability Insurance Policy No. LTD 121795 (the Policy) (see AR 1). Pursuant to the Policy, the defendant is the claims review fiduciary and has the "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties." (AR 17).

On November 1, 2013, approximately seven months after the plaintiff became employed by Pyramid, she stopped working due to

---

[1] The defendant filed the administrative record in this case (Docs. 8, 9). Citations to "AR" refer to pages contained in the administrative record. Citations to the parties' memoranda correspond to the numbers at the bottom of the pages.

pregnancy (AR 262). The plaintiff was told by her physician in March 2013 that she was pregnant (see AR 1476), and she submitted a claim for short-term disability benefits before she stopped working (AR 262-263). The plaintiff's physician stated that she would be unable to work due to pregnancy for six to eight weeks after delivery of the child, who was due on November 18, 2013 (AR 263).

On November 4, 2013, the plaintiff had elevated blood pressure, a headache, and swelling of her hands and feet (AR 1529). She was diagnosed with preeclampsia (see AR 1543). Preeclampsia is the "[d]evelopment of hypertension with albuminuria or edema between the 20th w[ee]k of pregnancy and the end of the 1st week postpartum." The Merck Manual of Diagnosis and Therapy, 17th Ed., p. 2057. [2]

On November 6, 2013, the plaintiff was admitted to the hospital in order to induce childbirth early due to preeclampsia (AR 1543, 1547-1549). On November 8, 2013, the plaintiff delivered her child, and she was discharged from the hospital two days later (AR 1531).

---

[2] If the condition does not improve immediately, the patient should be hospitalized and the delivery of the baby should be the objective. Id. Blood pressure may remain elevated for 6 to 8 weeks postpartum. Id. at 2058.

On November 17, 2013, the plaintiff returned to the hospital with, among other symptoms, a headache and dizziness (AR 1530). The plaintiff's admission diagnosis was hypertension (see AR 1579). An MRI showed that she had experienced a cerebellar stroke, for which a craniectomy was performed (see AR 1530, 254). Hypertension was identified as contributory to the plaintiff's stroke and "[t]here was likely some residual deficit from her preeclamptic childbirth" (AR 1544). The plaintiff was started on antihypertensive medication, and her blood pressure steadily declined (id.). The plaintiff was discharged from the hospital on December 1, 2013 (id.).

In February 2014, the plaintiff submitted a claim for long-term disability benefits (AR 227-236), stating that she was unable to work due to pain, confusion, anxiety, dizziness, forgetfulness and coordination problems caused by the stroke (AR 231). The defendant advised the plaintiff that, because the claimed disability occurred less than twelve months after she started working, the processing of her long-term disability claim would include a "Pre-existing condition investigation" to determine whether there was a pre-existing condition for which benefits were not payable under the

Policy (see Tr. 169-170). The correspondence to the plaintiff included the

Policy's definition of a "Pre-Existing Condition," which is (AR 169, see AR

26):

> any Sickness or Injury[3] for which the Insured
> received medical treatment, consultation, care or
> services, including diagnostic procedures, or took
> prescribed drugs or medicines, during the three (3)
> months immediately prior to the Insured's effective
> date of insurance.

The letter also recounted the Policy's Pre-Existing Conditions limitation as

follows (AR 169, see AR 25):

> **PRE-EXISTING CONDITIONS**: benefits will
> not be paid for a Total Disability:
> (1) caused by;
> (2) contributed to by; or
> (3) resulting from;
> a pre-existing Condition unless the Insured has
> been Actively at Work for one (1) full day
> following the end of twelve (12) consecutive
> months from the date he/she became an Insured.

In correspondence dated June 2, 2014, the defendant notified the

plaintiff that her claim for long-term disability benefits was denied based

upon the Pre-Existing Conditions limitation (see AR 209-212). The denial

---

[3]Pursuant to the Policy, Sickness includes "pregnancy, childbirth, miscarriage or abortion, any complications therefrom" (AR 12).

letter explained that the Pre-Existing Conditions investigation encompassed February 1, 2013, to May 1, 2013, which is the three-month period prior to the plaintiff's effective date of insurance coverage (AR 9, 209) (the "look-back period").

It summarized the plaintiff's pertinent medical records, including that the plaintiff was evaluated for pregnancy on March 27, 2013; she had developed high blood pressure and a headache on November 4, 2013; she was hospitalized for preeclampsia on November 6, 2013; the plaintiff gave birth on November 8, 2013; she had a cerebellar stroke on November 17, 2013, for which she had surgery; and that "[t]he doctors assessed that hypertension was contributory to your stroke"(AR 210). The letter concluded (id.):

> Our investigation has revealed that you received medical treatment, consultation, care or services, or took prescribed drugs or medicines for pregnancy during the period from February 1, 2013 to May 1, 2013. Accordingly, your initial Sickness or Injury is considered to be Pre-existing and your claim for LTD benefits must be denied.

The plaintiff was informed of her right to request a review of the determination within 180 days (AR 211).

The plaintiff appealed the denial of her long-term disability benefits in correspondence dated November 26, 2014 (AR 1445-1454). She argued, among other things, that the defendant "improperly applied the pre-existing clause in her policy" (AR 1449). The crux of the plaintiff's challenge was that (AR 1453):

> [The defendant] simply held its hat on the fact that [the plaintiff] was pregnant during the look back period. Whether [the plaintiff] was pregnant or not is irrelevant. The relevant question is (1) did she have preeclampsia, (2) did she have high blood pressure, (3) did she have any symptoms of stroke during the look back period. The answer is "no."

(see also AR 1450-1451). The plaintiff's appeal did not include a medical opinion controverting the defendant's conclusion that the plaintiff's pregnancy and stroke were related, or suggest another cause of the plaintiff's stroke.

In response to the plaintiff's appeal, the defendant conducted an independent review of the claim file, and obtained an independent medical review of the plaintiff's records by Dr. Jason Pollock, a physician who is board-certified in Obstetrics and Gynecology (see AR 219, 220; AR 1698-

1702).[4] Dr. Pollock reviewed numerous medical records (AR 1698-99) and identified pregnancy as a condition for which the plaintiff received care or treatment during the look-back period (AR 1700). Dr. Pollock also noted that the plaintiff was diagnosed with preeclampsia during the pregnancy, as evidenced by the presence of hypertension and proteinuria greater than 300mg in a 24-hour period (id.).   When asked whether the plaintiff's pregnancy related to her stroke, Dr. Pollock opined (id.):

> Pregnancy is required for preeclampsia to develop, and certainly preeclampsia contributed to if not caused her neurovascular accident....

Dr. Pollock stated that there was "no clinical evidence suggesting a neurovascular or hypertensive disorder" or preeclampsia during the look-back period (id.). However, Dr. Pollock concluded that the pregnancy and stroke were related because "pregnancy is required for preeclampsia to develop, and certainly preeclampsia contributed to if not caused her neurovascular accident" (see id.).

---

[4] Dr. Pollock's curriculum vitae is included in the record (AR 1703-1705).  Dr. Pollock also executed a certification that he has "no Conflict of Interest with this review" and that he has "no direct or indirect financial incentive for a particular determination" (AR 1702).

In correspondence dated March 18, 2015, the defendant denied the plaintiff's appeal (AR 219-222), concluding that benefits were not payable under the Policy's Pre-Existing Conditions limitation because "the claimed inability to work was caused by or resulted from a pre-existing condition [which] ... is excluded from coverage" (AR 221). The letter summarized (AR 220):

> After careful review and consideration, it was ultimately determined that [the plaintiff] received consultation, care or services during the time frame of February 1, 2013 to May 1, 2013 for her pregnancy. As preeclampsia is a condition related to pregnancy, [the plaintiff's] condition was excluded from coverage and no benefits were payable.

The letter noted that Dr. Pollock had reviewed the plaintiff's file, and opined that, although preeclampsia was not present during the look-back period, "[p]regnancy is required for preeclampsia to develop, and certainly preeclampsia contributed to if not caused her neurovascular accident..." (AR 220). The defendant added (AR 221):

> we are not indicating that [the plaintiff] had preeclampsia, high blood pressure or any symptoms of stroke during the preexisting time frame.... [T]he documentation available indicates that [the plaintiff] received consultation, care or

•

> services during the time frame February 1, 2013 to
> May 1, 2013 for pregnancy. The medical
> documentation supports that the conditions for
> which [the plaintiff] is alleging impairment were
> caused by or as a result of pregnancy. As the
> alleged impairing conditions were caused by or
> resulted from [the plaintiff's] pregnancy, the
> claimed impairment is excluded from coverage and
> no benefits are payable.

This decision exhausted the plaintiff's administrative remedies (id.).

The plaintiff then filed this lawsuit, alleging that the defendant's denial of her claim for long-term disability benefits violated 29 U.S.C. 1132(a)(1)(B), the Employment Retirement Income Security Act (ERISA) (Doc. 1). The defendant responded that the plaintiff's claim is barred by the Policy's Pre-Existing Conditions limitation (Doc. 3, p. 2).

The defendant has filed a Motion for Summary Judgment, contending that it is entitled to judgment as a matter of law because its decision to deny the plaintiff's claim for long-term disability benefits was not de novo wrong or unreasonable (Doc. 11). The plaintiff filed a memorandum in opposition to the motion (Doc. 14). The defendant, with leave of court (Doc. 17), filed a reply memorandum (Doc. 20). The motion was referred to me for a report and recommendation (Doc. 12).

In November 2015, more than one month after the dispositive motions deadline and the defendant's filing of its Motion for Summary Judgment, the plaintiff filed a Motion to Compel Discovery (Doc. 21). She also filed a "Motion to Allow Filing of Certification Pursuant to FRCivP 56(d)," arguing that summary judgment was premature due to a lack of discovery (Doc. 22). However, the plaintiff did not serve her discovery requests on the defendant until October 2, 2015 (Doc. 21, p. 1), after the dispositive motions deadline. There was no reasonable justification for the delay in conducting discovery and, therefore, the motions were denied as untimely (Doc. 28).[5]

It was also discussed during the hearing that the defendant had not produced the Claims Manual that it had agreed to provide (see id.). The defendant subsequently provided the Claims Manual to the plaintiff, and the plaintiff filed, with leave of court, a supplemental memorandum regarding

---

[5]The plaintiff argued that her discovery requests were not untimely because "the deadline for the completion [of discovery] has not passed" (Doc. 14, p. 5). When I noted during oral argument that the ERISA Case Management and Scheduling Order did not specify a discovery deadline, the plaintiff stated that she assumed discovery was permissible until the pre-trial conference. However, the plaintiff provided no basis for such an assumption. Further, it is untenable, as it would undermine the dispositive motions deadline and trial schedule. It was also unwarranted, as the plaintiff had several months prior to the dispositive motions deadline to conduct discovery.

matters in the Claims Manual (Doc. 30). The defendant, with permission, filed a reply to that supplement (Docs. 28, 32).

The parties waived an opportunity for oral argument on the motion for summary judgment (see Doc. 26).

## II.

A. The defendant filed its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a), F.R.Civ.P., provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

When the party moving for summary judgment has the burden of proof at trial, it must affirmatively show the absence of a genuine issue of material fact by presenting credible evidence that would entitle it to a directed verdict if the evidence was not controverted at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991). If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437-38. If the movant meets its initial burden, then it is entitled to summary judgment unless the opposing party comes forward with "significant, probative evidence demonstrating the existence of a triable issue of fact." Id. at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

B. An ERISA benefit plan participant may bring a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er]

rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B).  A plaintiff suing to recover benefits or enforce rights under ERISA bears the burden of proving her entitlement to benefits.  <u>Horton</u> v. <u>Reliance Standard Life Ins. Co.</u>, 141 F.3d 1038, 1040 (11th Cir. 1998).  However, where, as here, an insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage.  <u>Id</u>.

ERISA does not provide a standard for reviewing a benefits decision made by a plan administrator or fiduciary.   <u>Blankenship</u> v. <u>Metropolitan Life Ins. Co.</u>, 644 F.3d 1350, 1354 (11th Cir. 2011).  Therefore, based on guidance from the Supreme Court in <u>Metropolitan Life Ins. Co.</u> v. <u>Glenn</u>, 554 U.S. 105 (2008) and <u>Firestone Tire & Rubber Co.</u> v. <u>Bruch</u>, 489 U.S. 101 (1989), the Eleventh Circuit has articulated a six-step analysis for reviewing these decisions:

> (1) Apply the <u>de novo</u> standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "<u>de novo</u> wrong," then determine whether he was

vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blankenship v. Metropolitan Life Ins. Co., supra, 644 F.3d at 1355.

### III.

A.  The plaintiff initially argues that the defendant's motion is premature because a prerequisite to "summary judgment is ... adequate time for discovery," and she "has filed discovery and the deadline for the completion has not passed" (Doc. 14, pp. 4-5).  As discussed supra, p. 11, the plaintiff's request for discovery was untimely.  Furthermore, this is not a

circumstance, as the plaintiff suggests, where she did not have adequate time to conduct discovery.  The plaintiff had several months after the issuance of the case management Order to conduct discovery, but did not timely avail herself of the opportunity.  Therefore, the contention that the motion for summary judgment is premature is appropriately rejected.

> B.  As indicated, the Eleventh Circuit's framework requires the court to decide first if the defendant's denial of the plaintiff's claim for benefits was wrong.  See Blankenship v. Metropolitan Life Ins. Co., supra, 644 F.3d at 1355. To determine whether the defendant's decision was "wrong" the Court must examine the terms of the Plan and the administrative record to determine whether the Court agrees with the defendant's decision. See Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008).  Thus, no deference is afforded the administrator's decision.  Rather, the Court is to "stand in the shoes of the administrator and start from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." Stiltz v. Metropolitan Life Ins. Co., No. 1:05–CV-3052, 2006 WL 2534406 at *6 (N.D.Ga. Aug. 30, 2006), aff'd, 244 Fed.Appx. 260 (11th Cir. 2007).

The defendant's determination that long-term disability benefits were not payable based upon the Policy's Pre-Existing Conditions limitation is not wrong. The plaintiff does not dispute that her pregnancy was a pre-existing condition, and that, during her pregnancy, she was diagnosed with preeclampsia (Doc. 14, pp. 2, 6). Furthermore, the undisputed medical evidence is that preeclampsia is a pregnancy-related condition which contributed to, if it was not the cause of, her stroke (AR 1700). Therefore, the alleged disabling condition of her stroke was "contributed to by" the pre-existing condition of pregnancy, and the Policy's Pre-Existing Conditions limitation applies to this claim (AR 25).

Specifically, Dr. Pollock's uncontroverted medical opinion is that "pregnancy is required for preeclampsia to develop" and certainly "preeclampsia contributed to if not caused [the plaintiff's] neurovascular accident..." (AR 1700). Additionally, attending physician Dr. Luke Stephenson opined that hypertension, which was likely a residual deficit from her preeclamptic birth, was contributory to the plaintiff's stroke (AR 1544-1545). The plaintiff does not identify medical evidence controverting the link

between the plaintiff's pregnancy, preeclampsia, and stroke, nor is any apparent.

Further, the Pre-Existing Conditions policy limitation broadly states that "[b]enefits will not be paid for a Total Disability: (1) caused by; (2) contributed to by; or (3) resulting from; [a] pre-existing Condition" (AR 25). Examining the medical evidence in the context of the Policy, the plaintiff's stroke was "contributed to by" the pre-existing condition of pregnancy. This evidence also supports the finding that the plaintiff's stroke resulted from the pregnancy. Therefore, the defendant correctly decided that long-term disability benefits for the plaintiff's stroke are not payable because they are barred under the applicable Pre-Existing Conditions limitation.

The plaintiff argues that the defendant's decision to deny benefits was wrong because the initial "denial letter did not address the stroke, suggest that the stroke was related to the pregnancy, address the symptoms of the stroke which only presented on November 17, 2013 after the Plaintiff gave birth or even address the other causes of a stroke" (Doc. 14, p. 6). Notably, none of these contentions shows that the defendant's benefits

determination was "wrong." See Blankenship v. Metropolitan Life Ins. Co., supra, 644 F.3d at 1355. Regardless, none of the arguments is meritorious.

First, the denial letter did address her stroke. The plaintiff's long-term benefits claim was based upon her stroke (see AR 231-236) and the denial letter explains why that claim, i.e., the request for disability benefits due to stroke, was rejected.[6]   Furthermore, the denial letter expressly mentions the stroke. Specifically, it recounts that: the plaintiff went to the hospital on November 17, 2013, with complaints of a headache, dizziness, and nausea; an MRI showed a cerebellar infarct; physicians determined that the plaintiff had a "cerebellar stroke"; the plaintiff underwent surgery due to the stroke; her physician stated the plaintiff was unable to work due to the stroke; and "[t]he doctors assessed that hypertension was contributory to your stroke" (AR 210). Therefore, this contention is baseless.

The plaintiff argues next that the initial denial letter "did not ... suggest that the stroke was related to the pregnancy" (Doc. 14, p. 6). However, the letter denied the claim for long-term disability benefits due to

_____

[6] The plaintiff asserts that she "identified two grounds for her claim for disability benefits (1) her pregnancy and (2) the stroke" (Doc. 14, p. 6). That statement is accurate regarding the claim for short-term disability benefits, which is not at issue in this lawsuit (see Doc. 1).

her pre-existing condition of pregnancy (see AR 210). It also specifies, among other medical evidence, that the plaintiff was diagnosed with preeclampsia during the pregnancy, and that hypertension (which is a defining feature of preeclampsia, see supra, p. 3) contributed to the stroke (id.).

Importantly, the plaintiff's appeal shows that she understood the defendant's basis for denying the claim. See Terry v. Bayer Corp., 145 F.3d 28, 39 (1st Cir. 1998)(the beneficiary was supplied a statement of reasons that permitted a sufficiently clear understanding of the administrator's position). Thus, the plaintiff argued on appeal that the defendant failed to consider that "there are other causes of strokes not related to pregnancy" (AR 1451). Further, the appeal alleged that the defendant "simply assumed that because Ms. Bradshaw was pregnant, her pregnancy was, in and of itself, a pre-existing condition. [S]he exhibited no symptoms of preeclampsia during the look back period" (AR 1450-1451). Therefore, the contention that the initial denial letter did not suggest a relationship between the pregnancy and stroke is meritless.

The plaintiff also contends that "[i]t is reasonable to disassociate these conditions," and speculates that there could be other causes of stroke that the defendant has not addressed (Doc. 14, p. 7; see also Doc. 30, p. 3). Notably, the Policy does not require the defendant to exclude other possible contributory causes of stroke in order to establish that the Pre-Existing Conditions limitation applies (see AR 25) (broadly providing that benefits are excluded if the disabling condition is "caused by, contributed to by, or resulting from" the pre-existing condition). Furthermore, the plaintiff does not suggest another cause of her stroke, and prior to the preeclampsia and stroke, the plaintiff was noted as being in "excellent" health (AR 1571, see also AR 442, 1578). Therefore, this is not a circumstance where there was an obvious medical condition that the defendant failed to investigate, and the plaintiff's speculation that there could be other causes of stroke does not create a genuine issue of material fact as to the correctness of the benefits decision in this matter. See Rule 56(c), F.R.Civ.P.; Hoover v. Blue Cross and Blue Shield of Alabama, 855 F.2d 1538, 1542-43 (11th Cir. 1988) (the opposing party must designate specific facts showing a genuine issue of material fact for trial).

The plaintiff also argues that the denial does not address that the symptoms of the stroke were not present during the look-back period (Doc. 14, p. 6). The Policy's Pre-Existing Conditions limitation does not require that the alleged disabling condition, or symptoms thereof, manifest during the look-back period (see AR 25-26). Furthermore, the defendant discusses in its final denial letter the absence of stroke symptoms during the look-back period, but explains that the Pre-Existing Conditions limitation still applies (AR 221).

The plaintiff contends further that the claim denial was "wrong" because the defendant "chang[ed] the basis of [its] denial" (Doc. 14, p. 8). Specifically, the plaintiff contends that the "Defendant failed to address the stroke in its [initial] denial and shored up its position by securing the opinion of Dr. Pollock..." (id.; see also Doc. 30, p. 5 (plaintiff argues that the defendant created a "new rationale" for the denial based on Dr. Pollock's report)). This argument is frivolous. As the defendant succinctly responds (Doc. 20, p. 7):

> Dr. Pollock'[s] report did not provide [the defendant] with a new basis on which to deny Plaintiff's claim.   It simply supported [the defendant's] initial determination that Plaintiff

suffered a pre-existing condition that precluded payment of benefits under the Policy (AR 219-222, 1698-1705).

Thus, the initial denial letter informed the plaintiff that her claim for long-term disability benefits was denied because the pregnancy was a pre-existing condition that precluded benefits under the Policy's Pre-Existing Conditions limitation (see AR 209-212). As discussed, supra, p. 20, the plaintiff understood the basis for the denial.

The defendant's determination on appeal was the same (AR 219-222). Thus, the defendant once again determined that, under the Pre-Existing Conditions limitation, the plaintiff's pregnancy was a pre-existing condition that precluded benefits for her allegedly disabling stroke (see AR 221).

Additionally, the defendant cited in the final denial letter the independent medical opinion of Dr. Pollock, which supported its decision and was also responsive to issues raised in the plaintiff's appeal. Thus, the defendant explained that "[t]he file was referred for an independent appeal review to ensure you and your client were afforded every consideration" (AR 220; see 29 CFR 2560.503-1(h)(2)(iv)(the plan administrator must take into account all comments submitted by the claimant relating to the claim).

Further, the defendant's quotation of Dr. Pollock's opinion that "pregnancy is required for preeclampsia to develop, and certainly preeclampsia contributed to if not caused her neurovascular accident" (AR 220) responds to the plaintiff's contention that the Pre-Existing Conditions limitation is inapplicable because symptoms of high blood pressure, preeclampsia, and stroke were not present during the look-back period (see AR 1450-1451). In sum, the contention that the defendant relied on a different rationale in denying her appeal is baseless.

The plaintiff contends that this was a "got you now" denial because she "did not have the ability to address [Dr. Pollock's] opinion since the appeal was concluded" (Doc. 14, p. 8). However, the plaintiff was not entitled to Dr. Pollock's report until the conclusion of the administrative proceedings. Glazer v. Reliance Standard Life Ins. Co., supra, 524 F.3d at 1245-46. Furthermore, the plaintiff could have supported her appeal with a medical expert opinion that refuted the defendant's determination, but she did not do so. The plaintiff has also not meaningfully challenged in this case Dr. Pollock's opinion.

Additionally, in support of her contention that the defendant improperly "shore[d] up a denial," the plaintiff cites to inapposite caselaw (Doc. 14, pp. 7-8). Thus, in <u>Plummer</u> v. <u>Hartford Life and Accident Co.</u>, No. C-3-06-094, 2007 WL 43549 (S.D. Ohio, Jan. 5, 2007) and <u>Lauder</u> v. <u>First UNUM Life Ins. Co.</u>, 284 F.3d 375, 378 (2d Cir. 2002), the insurance companies raised new defenses in the federal lawsuits.[7] That did not occur here. The defendant's reason for denying the plaintiff's claim for long-term disability benefits was the same at the initial and final stages of the administrative proceedings. Therefore, the plaintiff's contention that Dr. Pollock's report was a new rationale or impermissibly "shore[d] up" the defendant's decision is baseless.

In sum, the defendant's denial of the plaintiff's claim for long-term disability benefits because it was excluded under the Policy's Pre-

---

[7] In this regard, the <u>Plummer</u> court stated that "[a]dministrators and their attorneys are not permitted to 'shore up' a decision after-the-fact by testifying as to the 'true' basis for the decision <u>after the matter is in litigation</u>" <u>Id</u>. at 14 (emphasis added). The plaintiff quoted part of this statement in her memorandum, but omitted the material phrase, "after the matter is in litigation" (<u>see</u> Doc. 14, p. 8).

The plaintiff also string cites pages of inapposite caselaw in her supplemental response (Doc. 30, pp. 8-10). That authority should not even be considered because the purpose of the supplemental memoranda was to present new arguments raised by the Claims Manual, not rehash arguments previously asserted in her opposition memorandum.

Existing Conditions limitation was not wrong. Concomitantly, the plaintiff's numerous challenges to that decision are unavailing.

C. The defendant argues alternatively that, "even a finding that its decision was <u>de novo</u> wrong does not mean that Plaintiff prevails....Plaintiff cannot prevail unless [the defendant's] decision is unreasonable" (Doc. 11, p. 12). The defendant is referring to step three of the analysis for ERISA claims, which directs that, if an administrator's decision is "<u>de novo</u> wrong," and it was vested with discretion in reviewing claims, the court determines whether "reasonable" grounds supported the decision (hence, review the decision under the more deferential arbitrary and capricious standard). <u>Blankenship</u> v. <u>Metropolitan Life Ins. Co.</u>, <u>supra</u>, 644 F.3d at 1355.

In this case, the Policy clearly grants the defendant the discretionary authority to make benefit decisions. Specifically, the Policy states (AR 17):

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine the eligibility for benefits. Decisions by

the claims review fiduciary shall be complete, final
and binding on all parties.

Accordingly, the defendant's denial of long-term benefits is governed by the

"arbitrary and capricious" standard of review.

"When conducting a review of an ERISA benefits denial under

an arbitrary and capricious standard (sometimes used interchangeably with

an abuse of discretion standard), the function of the court is to determine

whether there was a reasonable basis for the decision, based upon the facts

as known to the administrator at the time the decision was made." Jett v.

Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989).

If there is a reasonable basis, the decision "must be upheld as not being

arbitrary or capricious, even if there is evidence that would support a contrary

decision," White v. Coca-Cola Co., 542 F.3d 848, 856 (11th Cir. 2008), or "if

the court or anyone else might reach a different conclusion." Turner v. Delta

Family-Care Disability and Survivorship Plan, 291 F.3d 1270, 1274 (11th Cir.

2002). Similarly, if the "evidence is close," the administrator did not abuse

its discretion, and the requisite deference compels the affirmance of the

administrator's decision. See Doyle v. Liberty Life Assur. Co. of Boston, 542

F.3d 1352, 1363 (11th Cir. 2008).

The reasons that the defendant's decision was not wrong, supra, p. 17, show that the defendant's decision was clearly reasonable.

The next step of the analysis examines whether the defendant operated under a conflict of interest. Blankenship v. Metropolitan Life Ins. Co., supra, 644 F.3d at 1355. The defendant acknowledges that it "operates under a structural conflict of interest" because it is both the insurer and the decisionmaker (Doc. 11, p. 7). The Eleventh Circuit cautions, however, that even where a conflict of interest exists, courts still owe deference to the plan administrator's discretionary decisionmaking as a whole. Blankenship v. Metropolitan Life Ins. Co., supra, 644 F.3d at 1355.

There is no basis to conclude that the conflict of interest is a significant factor in this case, as the defendant provided a reasonable explanation for its decision, and there is no evidence that the defendant's decision was altered due to a conflict of interest. The defendant's retention of an independent medical expert further minimizes any concern that the decision was altered due to the conflict of interest. Therefore, the structural conflict of interest does not render the defendant's decision unreasonable. See Echols v. Bellsouth Telecommunications, Inc., 385 Fed.Appx. 959, 961 (11th Cir. 2010) ("[G]iven the eminent reasonableness of the decision, the

lack of evidence that any assumed conflict influenced the claims decision indicates that any assumed conflict should be given little weight in judging whether the decision was an abuse of discretion.").

The plaintiff argues that the defendant's benefits decision is unreasonable because "she amended and added as a basis for her short and long term disability claim a new and separate medical condition–a disabling stroke" (Doc. 14, p. 8). The point of this argument is unclear, as the long-term disability claim was based solely on the stroke, as the defendant recognized (AR 220, 231, 235-236).

Next, the plaintiff contends that the defendant "ignore[d]" that she "had no symptoms of or got treatment for a stroke during the look back period" (Doc. 14, p. 11; see also Doc. 30, p. 3). The defendant did not ignore this argument. The defendant's claims department mentioned it in the claims notes, and requested that its medical expert address that issue (see AR 146). Correspondingly, Dr. Pollock addressed that, during the look-back period that "there was no clinical evidence suggesting a neurovascular or hypertensive disorder" or preeclampsia, but that the pregnancy and stroke were related because "[p]regnancy is required for preeclampsia to develop, and certainly

preeclampsia contributed to if not caused her neurovascular accident...."(AR 1700, <u>see</u> AR 220). Therefore, this contention is meritless.

The plaintiff argues further that "there was no medical evidence of any link between the pregnancy or preeclampsia and the stroke at the time [of] the original denial June 2, 2014 (Doc. 14, p. 8). This is incorrect (<u>see</u> AR 1585). Furthermore, the court's review encompasses the medical evidence at the time of the final benefits decision. <u>See Glazer</u> v. <u>Reliance Standard Life Ins. Co.</u>, <u>supra</u>, 524 F.3d at 1246.

The plaintiff also contends that the defendant's decision was unreasonable because "there are other causes for a stroke which the Defendant failed to address" (Doc. 14, p. 8). That argument, discussed <u>supra</u>, p. 21, is baseless.

Additionally, the plaintiff argues that the defendant's decision "was influenced by structural conflict" (Doc. 14, p. 8). However, it is insufficient for a plaintiff, as done here, to merely identify that a structural conflict exists. <u>See Capone</u> v. <u>Aetna Life Ins. Co.</u>, 592 F.3d 1189, 1196 (11th Cir. 2010)("it is not the defendant's burden to prove its decision was not tainted by self-interest"). As the Eleventh Circuit explained: "The presence of a structural conflict of interest — an unremarkable fact in today's

marketplace — constitutes no license, in itself, for a court to enforce its own preferred de novo ruling about a benefits decision." Blankenship v. Metropolitan Life Ins. Co., supra, 644 F.3d at 1356.

The plaintiff speculates that discovery (which she did not seek in a timely manner) could reveal support for her contention. However, the plaintiff's speculation does not create a material issue of fact on this issue. See id. (Where there is a conflict of interest, "the basic analysis still centers on assessing whether a reasonable basis existed for the administrator's benefits decision.").

In sum, assuming that the defendant wrongly decided to deny the plaintiff benefits based on the Pre-Existing Conditions limitation (which it did not), and factoring into the analysis its conceded conflict of interest, the defendant's decision was clearly reasonable.

D.   As indicated, the plaintiff was permitted to file a supplementary opposition memorandum to address matters in the Claims Manual (see Doc. 28). Those arguments are also baseless.

The plaintiff contends that the defendant failed to include in the administrative record the letter notifying the plaintiff of the pre-existing Condition investigation and the pre-existing Condition worksheet (Doc. 30,

pp. 1-2).  As the defendant points out, that contention is incorrect (<u>see</u> AR 169-171).

The plaintiff argues next that there was "an improper application of the pre-existing condition limit clause" because "the administrative procedure manual fails to explain how the adjuster is to go about analyzing and apply[ing] the pre-existing condition clause" and does not "address a situation...where there is a gap of time between the pre-existing condition...and a subsequent event" (Doc. 30, p. 3).  The Policy provision and definitions are self-explanatory, and to the extent that there are questions about its application in a particular case, the adjuster is directed to request additional information and/or clarify existing information (<u>see</u> AR 1726; Doc. 30, p. 2).

The plaintiff also contends that "[t]here is no documentation in the administrative record that indicates that the adjuster sought to clarify any alleged causal relationship between the pregnancy and the subsequent stroke at the time the claim was denied" (Doc. 30, p. 2).  That is incorrect (<u>see</u> AR 146, 1700).

E.  As a final matter, the plaintiff argues that summary judgment is unjustified because "[t]here is a material dispute as to which policy governs

this action" (Doc. 14, p. 2). This argument is baseless, as there is no evidence of a governing Policy other than the one in the administrative record.

This contention is based upon an omission from the denial letters. When quoting the Pre-Existing Conditions limitation, the denial letters omit the clause that benefits will not be paid for a disability that was "contributed to by" a pre-existing condition (AR 209, 219). Thus, the correspondence states "Benefits will not be paid for a Total Disability: (1) caused by; or (2) resulting from" a pre-existing condition (id.). This is an incomplete recitation of the Policy's pre-existing condition provision, which states that "Benefits will not be paid for a Total Disability: (1) caused by; (2) contributed to by; or (3) resulting from" a pre-existing condition (AR 25)(emphasis added). The complete definition is contained in the letter advising the plaintiff of the pre-existing conditions investigation (AR 169).

The defendant asserts that this omission was "an apparent typographical error" (Doc. 20, p.1) and represents (id., pp. 2-3):

> [T]he only document within the Administrative Record that pertains to Plaintiff's claim of a disputed fact is the Policy. The Policy that was produced ... states that benefits are not payable for any disability that is not only 'caused by' or 'resulting from' but also that is 'contributed to by' a pre-existing condition. (AR 25).

Therefore, the omission of the "contributed to by" language from the denial letters does not, as the plaintiff argues, create a genuine issue of material fact "as to which policy governs this action" because there is no evidence that another policy applies to this claim.   <u>See</u> Rule 56(c)(1), F.R.Civ.P. (a contention of a genuinely disputed fact must be supported by references to the record).[8]

V.

For the foregoing reasons, judgment as a matter of law in the defendant's favor on the plaintiff's claim is warranted. I therefore recommend that the Defendant's Motion for Summary Judgment (Doc. 11) be granted.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JANUARY 2 5, 2016

<u>NOTICE TO PARTIES</u>

---

[8]The plaintiff may not rely on a lack of discovery to create a genuine issue of material fact as to the existence of another Policy because, as the defendant notes, the plaintiff "made no timely effort to secure any evidence to support her claim" (Doc. 20, p. 2). Thus, the administrative record was filed on June 17, 2015 (Docs. 8, 9), which gave the plaintiff ample time to uncover this discrepancy and investigate it.